**Michael E. Haglund,** OSB No. 772030
email:  mhaglund@hk-law.com
**Eric J. Brickenstein,** OSB No. 142852
Email: ebrickenstein@hk-law.com
**HAGLUND KELLEY LLP**
200 S.W. Market Street, Suite 1777
Portland, Oregon 97201
Phone: (503) 225-0777
Facsimile: (503) 225-1257

*Attorneys for Third-Party Defendant*

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

(Portland Division)

| | |
|---|---|
| PORT OF KALAMA, a Washington public port, and John Does 1 through 100,<br><br>           Plaintiff,<br>     v.<br>M/V SM MUMBAI, her engines, tackle, apparel, furniture, equipment and all other necessaries appertaining and belonging thereto, in rem; KLC SM CO LTD, Korea Tonnage No. 19 Shipping Co., dba MS Line Corporation and SM Line Corporation, *in personam,*<br><br>           Defendants,<br><br>Korea Tonnage No. 19 Shipping Co.,<br><br>           Third-Party Plaintiff,<br><br>Vs.<br><br>Christopher M. Boyce, an individual,<br><br>           Third-Party Defendant. | Case No.:   3:20-cv-00621-IM<br><br>**THIRD-PARTY DEFENDANT CHRISTOPHER M. BOYCE'S REPLY TO MOTION TO DISMISS THIRD-PARTY COMPLAINT** |

# MEMORANDUM

## I.   INTRODUCTION.

Third-party plaintiff Korea Tonnage No. 19 Shipping Co. ("Korea Tonnage") concedes that, as a licensed Columbia River Pilot, Captain Christopher Boyce is immune from liability for professional negligence. For this reason, Korea Tonnage purports to allege a claim under the statutory exception for willful misconduct. Korea Tonnage's Third-Party Complaint must be dismissed because the facts alleged do not support a plausible claim that Captain Boyce's conduct rises to that heightened culpability standard.

## II.   LEGAL STANDARD.

Korea Tonnage states the wrong legal standard for a Rule 12(b)(6) motion to dismiss. ECF No. 15 at 2. The "beyond doubt" standard urged by Korea Tonnage has been bad law since the Supreme Court overruled it 13 years ago in *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955 (2007). *See, e.g.*, *Charleston v. Wells Fargo Bank, N.A.*, 2018 WL 5660745, at *4 (D. Or. Sept. 5, 2018) ("The Rule 12(b)(6) standard that Plaintiff cites is based on [*Conley v. Gibson*], but the Supreme Court has overruled *Conley* on this issue.").

Under the correct legal standard, stating a plausible claim requires "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.' *Id.*, (quoting *Twombly*, 550 U.S. at 557, 127 S.Ct. 1955). *Twombly* and *Iqbal* rejected the "beyond doubt" standard because it exposed defendants to burdensome litigation based on

conclusory statements and inferences that cannot fairly be drawn from the facts alleged, which is exactly what Korea Tonnage aims to do to Captain Boyce.

### III.     ARGUMENT.

#### A.     The Complaint Does Not State a Claim for Willful Misconduct.

The parties agree in principle that "pilots are potentially liable for the consequences of their willful misconduct or gross negligence but not for ordinary negligence or errors in judgment." ECF No. 15 at 4. Plaintiff's motion to dismiss, therefore, turns on the answers to two questions. First, what constitutes willful misconduct by a pilot? Second, do the facts alleged support a plausible claim that Captain Boyce's alleged actions rise to that heightened standard?

As to the first question, Captain Boyce contends that:

> The Act's text and context show that the Legislature intended the term "willful misconduct" to incorporate an element of bad faith – i.e. that the pilot intended to cause injury or, at minimum, knew that his actions would cause injury and deliberately ignored the risk.

ECF No. 13 at 9.

In response, Korea Tonnage disputes (at least nominally) that willful misconduct requires bad faith. Korea Tonnage concedes, however, that the standard requires a defendant to have "acted with conscious indifference to the damage he knew was probable." ECF No. 15 at 6.

Captain Boyce stands by his proposed legal standard for the reasons stated in his opening brief. But even under Korea Tonnage's own definition, the Third-Party Complaint does not come close to stating a plausible claim for willful misconduct. Therefore, in the interest of simplifying the issues and for purposes of this reply only, Captain Boyce assumes but does not concede that willful misconduct as used in the Act means that a licensed pilot acted with conscious indifference to damage that he knew was probable.

Before turning to Korea Tonnage's allegations against Captain Boyce, it is worth examining the one case Korea Tonnage cites as an example of conduct that meets its proposed legal standard, *Greger Pac. Marine, Inc. v. Oregon Offshore Towing, Inc.*, No. 3:13-CV-00461-SI, 2014 WL 3420770 (D. Or. July 10, 2014). Korea Tonnage cites *Greger Pacific* for the following proposition:

> In *Gregor Pacific* the court determined that summary judgment could not be granted as to a claim of gross negligence due to evidence of, among other factors, the towing vessel going at a "significantly higher speed than was appropriate for the circumstances."

ECF No. 15 at 5, n. 8.

No doubt recognizing that Captain Boyce's sole error was proceeding past the Port of Kalama at an excessive speed, Korea Tonnage seizes on *Greger Pacific* for the idea that this fact alone can suffice to state a plausible claim for willful misconduct.

What, then, were the "other factors" in *Greger Pacific* that Judge Simon considered when he denied summary judgment on the question of gross negligence? *Gregor Pacific* involved the ill-fated towage of two barges from Honolulu to San Francisco. Both barges sank in transit and the barges' owner (represented by the undersigned counsel), sued the tow company, Oregon Offshore Towing, Inc., for gross negligence. The following facts were supported by substantial evidence at summary judgment:

- Oregon Towing knowingly towed the barges without a valid load line certificate, which the U.S. Coast Guard required to ensure the barges' seaworthiness.

- Oregon Towing towed the barges in a "tandem formation" that the tug captain later admitted was "incorrect and unsafe."

- The first barge sank approximately 40 miles of the coast of Hawaii. The sinking was a "Serious Marine Incident" that was required to be reported to the Coast Guard under federal law. Oregon Towing failed to report the incident.

- After the first Serious Marine Incident, Oregon Towing failed to administer federally required drug or alcohol tests. The tug captain, who just four years earlier had served a one-year license suspension for cocaine use while at work, explained that he did not administer alcohol tests because he "hadn't seen anybody drinking." Oregon Towing also claimed (without explanation) that there were no drug test kits aboard the vessel, which is a violation of federal law.

- After the first barge sank, the remaining barge was re-rigged with an inferior "soft line" system. The original 300 feet of heavy wire rigging, meanwhile, was left dangling below the remaining barge.

- A prudent sailor would not have exceeded two knots in route to the nearest port under the emergency tow conditions. Rather than return to Pearl Harbor, Oregon Towing sailed on toward California at an average speed of five knots.

- Six days later, the tug captain observed the second barge taking on water but still carried on at an average speed of four knots.

- Two days after the tug captain noticed it taking on water, the second barge sank in the middle of the Pacific Ocean. Oregon Towing again failed to report this second Serious Maritime Incident to the Coast Guard and again failed to administer federally required drug and alcohol tests.

*Greger Pac. Marine*, 2014 WL 3420770, at *2-7 (D. Or. July 10, 2014).

Under these facts (and the highly reasonable inference of drug or alcohol use), the Court declined to hold as a matter of law that Oregon Towing's conduct was not grossly negligent.

Juxtaposed against *Greger Pacific*, the deficiency of Korea Tonnage's allegations is stark. Korea Tonnage's only factual allegation of misconduct is that Captain Boyce passed the marina at an excessive speed after observing that there was no vessel berthed at the Kalama Export terminal. There is no allegation that Captain Boyce engaged in repeated, illegal or objectively outrageous misconduct. There is no allegation that Captain Boyce had previously experienced wake damage at the marina as a result of piloting a similar sized vessel at similar speed. In short, there are no facts to underwrite Korea Tonnage's conclusory accusation that Captain Boyce maintained his speed despite "knowing" that his failure to slow the Vessel would

create a "*probability* of causing substantial damage to persons or property at the marina." ECF No. 15 at 6. (emphasis in original). It is not, as Korea Tonnage contends, reasonable to infer from the facts alleged that Captain Boyce's conduct can be summed up as "Damn the marina." *Id.*

Captain Boyce is a professional pilot who was supervising two trainees at the time of this regrettable incident. Korea Tonnage's inflammatory accusation that Captain Boyce performed those serious duties with malice has absolutely no basis in fact. To the contrary, the only reasonable inference to be drawn from the facts alleged is that Captain Boyce believed his speed posed a risk only to vessels berthed at the Kalama Export terminal. Because no vessel was tied up at that dock at the time of the incident, Captain Boyce believed that the risk was mitigated and maintained his speed accordingly. That is an error in judgment, nothing more.

  **B.** **Allowing Korea Tonnage to Proceed Would Undermine the Legislature's Carefully Reasoned Decision to Limit Pilot Liability.**

The Oregon Legislature made a reasoned policy choice to allow pilots to limit their liability in order to maintain competitive pilotage rates for the benefit of maritime commerce. Korea Tonnage claims Captain Boyce was "disingenuous" in pointing out that a judicial decision that erodes the Act's distinction between negligence and willful misconduct would undermine that policy, because the Pilots already carry $5 million in insurance coverage. What Korea Tonnage omits is that the reason the Pilots can and do purchase insurance at a very affordable premium is that they are immune from liability for negligence. If Korea Tonnage can proceed under a theory of willful misconduct based on the threadbare facts alleged in the Third-Party Complaint, then the Pilots' immunity is emasculated. Insurance premiums would indeed rise very substantially, and they would be passed on through increased pilotage rates.

To preserve the integrity of the statutory scheme, courts must draw a clear line between willful misconduct for which pilots can be held individually liable and negligence for which they cannot. The facts in the Third-Party Complaint, even viewed in the light most favorable to Korea Tonnage, allege nothing more than that Captain Boyce made an error in judgment by failing to slow the Vessel because he perceived that a vessel berth at the Kalama Export terminal – the contingency that would ordinarily prompt him to reduce speed when passing the Port – was not present. If Captain Boyce's conduct falls on the actionable side of the line between the rule against pilot liability and its exception, then so does virtually every other instance of pilot error.

### C. There is No Local Rule 7-1 Violation.

Korea Tonnage served the Third-Party Complaint on August 17, 2020. ECF No. 11. Under FRCP 12, Captain Boyce had 21 days to respond, meaning that the deadline was September 8. Captain Boyce filed this motion on that date. ECF No. 13.

Before filing this motion, counsel for Captain Boyce attempted to confer by making telephone calls to both attorneys representing Korea Tonnage. Counsel's calls were not answered and his voice messages were not returned. Thereafter, counsel followed up with both attorneys by email requesting that they either confirm Korea Tonnage's opposition or advise as to their availability to confer. Neither of Korea Tonnage's attorneys responded to that email. After yet another attempt to reach Korea Tonnage's counsel by telephone, Captain Boyce's counsel timely filed this motion.

Captain Boyce's multiple unanswered attempts to reach plaintiff's attorneys satisfies his obligation under LR 7-1. Korea Tonnage offers no explanation as to why neither of its attorneys

answered their phones and did not respond to voice or email messages. In any event, conferral would not have resolved this disputed dispositive motion.

## IV. CONCLUSION.

For the foregoing reasons and those stated in Captain Boyce's opening brief, the Third-Party Complaint should be dismissed with prejudice.

DATED this 6th day of October, 2020.

                          **HAGLUND KELLEY LLP**

                          /s/ Michael E. Haglund
                          Michael E. Haglund, OSB No. 772030
                          Eric J. Brickenstein, OSB No. 142852
                          Attorneys for Third Party Defendant

# CERTIFICATE OF SERVICE

I hereby certify that on the 6th day of October, 2020, I served a true copy of the foregoing **THIRD-PARTY DEFENDANT CHRISTOPHER M. BOYCE'S REPLY TO MOTION TO DISMISS THIRD-PARTY COMPLAINT,** on the following:

James McCurdy
Thomas McDermott
Lindsay Hart LLP
1300 SW Fifth Avenue, Ste. 3400
Portland, OR 97201

*Attorneys for Third Party Plaintiff*
*Korea Tonnage No. 19 Shipping Co.*

by the following indicated method(s):

☐ by **mailing** a full, true and correct copy thereof in a sealed first-class postage prepaid envelope, addressed to the foregoing attorney at the last known office address of the attorney, and deposited with the United States Post Office at Portland, Oregon on the date set forth above.

☐ by causing a full, true and correct copy thereof to be **hand delivered** to the attorney at the last known address listed above on the date set forth above.

☐ by sending a full, true and correct copy thereof via **overnight mail** in a sealed, prepaid envelope, addressed to the attorney as shown above on the date set forth above.

☐ by **faxing** a full, true and correct copy thereof to the attorney at the fax number shown above, which is the last-known fax number for the attorney's office on the date set forth above.

☒ by transmitting full, true and correct copies thereof to the attorneys through the court's Cm/ECF system on the date set forth above.

s/ Michael E. Haglund
Michael E. Haglund, OSB No. 772030
Eric J. Brickenstein, OSB No. 142852
Attorneys for Third-Party Defendant

PAGE 1 – CERTIFICATE OF SERVICE