IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **PORT OF KALAMA**, a Washington public port, and **John Does 1 through 100**,<br><br>  Plaintiffs,<br><br>  v.<br><br>**M/V SM MUMBAI**, her engines, tackle, apparel, furniture, equipment and all other necessaries appertaining and belonging thereto, in rem; **KLC SM CO LTD**, **Korea Tonnage No. 19 Shipping Co., dba SM Line Corporation**, in personam,<br><br>  Defendants,<br><br>**Korea Tonnage No. 19 Shipping Co.**,<br><br>  Third-Party Plaintiff,<br><br>  v.<br><br>**Christopher M. Boyce**, an individual,<br><br>  Third-Party Defendant. | Case No. 3:20-cv-00621-IM<br><br>**OPINION AND ORDER** |

**IMMERGUT, District Judge.**

This matter comes before this Court on Third-Party Defendant Christopher Boyce's ("Boyce") motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6). ECF 13. Third-Party Plaintiff Korea Tonnage No. 19 Shopping Co. ("Korea Tonnage") is a privately held corporation which owns the M/V SM MUMBAI (the "Vessel"), an ocean-going vessel which occasionally operates on the navigable waters of the United States. ECF 8 at ¶ 4. Boyce was the lead pilot aboard the Vessel when the incident giving rise to the present action occurred. *Id*. at ¶ 5.

On April 16, 2020, Port of Kalama, a Washington public port which owns and operates a vessel marina on the Columbia River in Kalama, Washington, brought suit against the Vessel and Korea Tonnage. ECF 1. Port of Kalama's complaint alleged that on April 13, 2020, the Vessel passed its marina at "an excessively high rate of speed, causing an excessively large wake" which caused $5.5 million in damages to the marina and boats moored there. ECF 1 at ¶ 8; ECF 8 at ¶ 10.

On August 6, 2020, Korea Tonnage filed a third-party complaint against Boyce alleging that the damages to the boats and marina were caused by Boyce's "willful misconduct." ECF 8 at ¶ 14. On September 8, 2020, Boyce filed a motion to dismiss the third-party complaint for failure to state a claim upon which relief can be granted. ECF 13.

This Court concludes that Korea Tonnage has alleged sufficient facts to states a facially plausible claim against Boyce. Accordingly, Boyce's motion to dismiss is denied.

## BACKGROUND

The following facts are taken from Korea Tonnage's third-party complaint. *See Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1140 (9th Cir. 2012) ("On a motion to dismiss, all material facts are accepted as true and are construed in the light most favorable to the plaintiff."). On

April 13, 2020, Boyce piloted the Vessel as it navigated up the Columbia River. *Id*. at ¶ 6. Boyce was the senior, lead pilot and had two trainee pilots with him. *Id*. Boyce directed the speed of the Vessel the entire time he was aboard. *Id*. at ¶ 7.

The Vessel navigated upriver without incident until approximately 3:35 a.m., when Boyce directed a speed increase from "half ahead" (60 rpm) to "full ahead" (75 rpm). *Id*. at ¶ 8. The Vessel's full ahead speed was in excess of fifteen knots. *Id*. At around 3:58 a.m., the Vessel passed the Kalama Export grain terminal at a speed of fifteen to sixteen knots. *Id*. at ¶ 9. A few minutes later, the Vessel passed the entrance to Port of Kalama's marina at approximately the same speed. *Id*. The Vessel's speed created a three- to four-foot-tall wake wave which caused damage to the boats moored at the marina and structural damage to the marina's docks and supporting structures. *Id*. at ¶ 10.

In a report from April 17, 2020 to the Oregon Board of Maritime Pilots ("OBMP"), Boyce reported that his "standard practice" is to reduce the speed of any vessel he pilots to approximately ten knots when passing Port of Kalama's marina. *Id*. at ¶ 11. Boyce said he operated the Vessel at full ahead speed because there were no vessels berthed at the Kalama Export grain terminal. *Id*. Boyce's OBMP report does not mention any consideration given to the potential impact of the Vessel's speed on boats moored at Port of Kalama's marina or the structure of the marina itself. *Id*. at ¶ 12.

## STANDARDS

A motion to dismiss for failure to state a claim may be granted only when there is no cognizable legal theory to support the claim or when the complaint lacks sufficient factual allegations to state a facially plausible claim for relief. *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010). In evaluating the sufficiency of a complaint's factual

allegations, the court must accept as true all well-pleaded material facts alleged in the complaint and construe them in the light most favorable to the non-moving party. *See Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010). To be entitled to a presumption of truth, allegations in a complaint "may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011). The court must draw all reasonable inferences from the factual allegations in favor of the plaintiff. *Newcal Indus., Inc. v. Ikon Office Sol.*, 513 F.3d 1038, 1043 n.2 (9th Cir. 2008). The court need not, however, credit the plaintiff's legal conclusions that are couched as factual allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009).

A complaint must contain sufficient factual allegations to "plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." *Starr*, 652 F.3d at 1216. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Mashiri v. Epsten Grinnell & Howell*, 845 F.3d 984, 988 (9th Cir. 2017) (quotation marks omitted).

## DISCUSSION

Boyce moves to dismiss Korea Tonnage's third-party complaint for failure to state a claim upon which relief can be granted. ECF 13 at 1. Specifically, Boyce asserts that Korea Tonnage's claim against him is barred by O.R.S. 776.510 *et seq* (the "Act"). *Id.* at 8–11. In an

effort to "stimulat[e] and preserv[e] … maritime commerce," the Act limits the liability of pilots from the consequences of "negligence or errors in judgment." O.R.S. 776.510, 776.520. However, the Act expressly maintains that pilots can be held liable for "willful misconduct or gross negligence." O.R.S. 776.520(4). Boyce claims that Korea Tonnage's complaint does not allege sufficient facts to state a claim that he acted with willful misconduct or gross negligence, as is required for a pilot to be liable under the Act. ECF 13 at 8–11.

Ninth Circuit precedent directs courts considering maritime torts to look to state common law. *Greger Pac. Marine, Inc. v. Or. Offshore Towing, Inc.*, No. 3:13-cv-00461-SI, 2014 WL 3420770, at *6 n.5 (D. Or. July 10, 2014) (citing *Royal Ins. Co. of America v. Sw. Marine*, 194 F.3d 1009, 1015 (9th Cir. 1999)). Under Oregon law, "[g]ross negligence is characterized by conscious indifference to or reckless disregard of the rights of others." *Garrison v. Pac. Nw. Bell*, 608 P.2d 1206, 1211 (Or. Ct. App. 1980). "This state of mind has been described as an 'I don't care what happens' attitude." *Id.* at 1211–12. Thus, the question before this Court is whether Korea Tonnage's complaint states a facially plausible claim that Boyce acted with conscious indifference to or reckless disregard of the rights of others.

Here, the third-party complaint alleges that Boyce was the lead pilot in exclusive control of the Vessel's speed when it created a large wake wave that resulted in millions of dollars of damage to Port of Kalama's marina and the boats moored there. ECF 8 at ¶ 10. Boyce concedes in his motion to dismiss that he "should have slowed the Vessel as he passed the Port" and that his decision not to "resulted in property damage." ECF 13 at 4. Indeed, Boyce wrote in his OBPM report that his "standard practice" is to reduce the speed of any vessel he pilots to approximately ten knots when passing Port of Kalama's marina. ECF 8 at ¶ 11. Yet on April 13, 2020, Boyce maintained a "full ahead" speed of fifteen to sixteen knots when passing the marina.
PAGE 5 – ORDER

*Id*. In his OBPM report, Boyce said he operated the Vessel at full ahead speed because there were no vessels berthed at the Kalama Export grain terminal, which the Vessel passed a few minutes before passing Port of Kalama's marina. *Id*. However, the OBMP report does not mention any consideration given to the potential impact of the Vessel's speed on boats moored at Port of Kalama's marina or the structure of the marina itself. *Id*. at ¶ 12. Boyce made this decision despite knowing of the marina's presence and the probability of causing substantial damage to persons and property at the marina. *Id*.

Taking Korea Tonnage's allegations as true and drawing all reasonable inferences in its favor, this Court finds that the third-party complaint states a facially plausible claim that Boyce acted with conscious indifference to or reckless disregard of the rights of others. Boyce had exclusive control of the Vessel's speed and disregarded his own standard practice when he navigated the Vessel by Port of Kalama's marina at full ahead speed. In making this decision, Boyce reported considering the lack of vessels berthed at the Kalama export grain terminal, but not the boats moored at the marina or the marina itself despite knowing of their presence. A central purpose of having a river pilot like Boyce navigate river voyages is because of their local knowledge of structures and facilities that could be damaged by a large wake wave. These facts are sufficient to state a facially plausible claim that Boyce's decisions were marked with a conscious indifference to the rights of Port of Kalama.

Under Oregon law, "[o]rdinarily, the issue of gross negligence is a question of fact to be decided by the jury." *Garrison*, 608 P.2d at 1212 (citing *Oregon Auto Ins. Co. v. Fitzwater*, 531 P.2d 894, 898 (Or. 1975)). As the Oregon Supreme Court has explained, this is because "it is seldom that a determination can be made as to the degree of negligence without the submission of proof. All the surrounding circumstances, too numerous to be alleged in a complaint, must be

PAGE 6 – ORDER

taken into consideration in determining whether the alleged acts were done with the requisite reckless disregard." *Fassett v. Santiam Loggers, Inc.*, 517 P.2d 1059, 1060 (Or. 1973). Having pled sufficient facts that state a plausible claim of gross negligence, Korea Tonnage should be afforded the opportunity to proceed with its claim and present a full submission of proof on the issue of whether Boyce's conduct rose to the level of gross negligence.

## CONCLUSION

For these reasons, Boyce's motion to dismiss Korea Tonnage's third-party complaint, ECF 13, is DENIED.

**IT IS SO ORDERED.**

DATED this 16th day of December, 2020.

/s/ Karin J. Immergut
Karin J. Immergut
United States District Judge

PAGE 7 – ORDER