# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **PORT OF KALAMA**, a Washington public port, and **John Does 1 through 100**,<br><br>    Plaintiffs,<br><br>    v.<br><br>**M/V SM MUMBAI**, her engines, tackle, apparel, furniture, equipment and all other necessaries appertaining and belonging thereto, in rem; **KLC SM CO LTD, Korea Tonnage No. 19 Shipping Co., dba SM Line Corporation**, and **SM Line Corporation** in personam,<br><br>    Defendants,<br><br>**Korea Tonnage No. 19 Shipping Co.**,<br><br>    Third-Party Plaintiff,<br><br>    v.<br><br>**Christopher M. Boyce**, an individual,<br><br>    Third-Party Defendant. | Case No. 3:20-cv-00621-IM<br><br>**OPINION AND ORDER** |

PAGE 1 – OPINION AND ORDER

**IMMERGUT, District Judge.**

This matter comes before the Court on Third-Party Defendant Christopher M. Boyce's Motion for Summary Judgment. ECF 53. Third-Party Plaintiff Korea Tonnage No. 19 Shipping Co. ("Korea Tonnage") is a privately held corporation which owns the M/V SM MUMBAI ("Vessel"), an ocean-going vessel which at times operates on the navigable waters of the United States. ECF 8 at ¶ 4. Boyce was the lead pilot aboard the Vessel when the incident giving rise to this action occurred. *Id*. at ¶ 5.

On April 16, 2020, Port of Kalama, a Washington public port which owns and operates a vessel marina on the Columbia River in Kalama, Washington, brought suit against the Vessel and Korea Tonnage. ECF 1 at ¶ 2. Port of Kalama alleged that on or about April 13, 2020, the Vessel passed its marina at "an excessively high rate of speed, causing an excessively large wake" which caused $5.5 million in damages to the marina and the boats moored there. ECF 1 at ¶ 8; ECF 8 at ¶ 10.

On August 6, 2020, Korea Tonnage filed a third-party complaint against Boyce alleging that the damages to the boats and marina were caused by Boyce's "willful misconduct." ECF 8 at ¶ 14. On August 10, 2021, Boyce filed a motion for summary judgment. ECF 53. This Court has determined that oral argument would not help resolve the matter and issues this opinion and order based on the briefing. *See* LR 7-1(d).

After considering the evidence and pleadings, this Court finds that there are genuine issues of material fact precluding summary judgment in Boyce's favor, specifically whether his conduct rises to the level of willful misconduct. For that reason, Boyce's motion for summary judgment is denied.

## STANDARDS

A party is entitled to summary judgment if the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party has the burden of establishing the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The court must view the evidence in the light most favorable to the non-movant and draw all reasonable inferences in the non-movant's favor. *Clicks Billiards, Inc. v. Sixshooters Inc.*, 251 F.3d 1252, 1257 (9th Cir. 2001).

Although "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . ruling on a motion for summary judgment," the "mere existence of a scintilla of evidence in support of the [non-movant's] position [is] insufficient . . . ." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 255 (1986). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation and internal quotation marks omitted).

## BACKGROUND

On April 13, 2020, Boyce piloted the Vessel as it navigated up the Columbia River. ECF 51 at ¶ 3(c), (d). Boyce was the senior, lead pilot accompanied by two trainee pilots. *Id*. Boyce directed the speed of the Vessel the entire time he was aboard. *Id*. at ¶ 3(e).

The Vessel navigated upriver without incident until about 3:35 a.m., when Boyce directed a speed increase form "half ahead" (60 rpm) to "full ahead" and then to "sea speed" (75 rpm). ECF 62-1, Ex. C, at 8. The Vessel's sea speed exceeded fifteen knots. *Id*. At around 3:58 a.m., the Vessel passed the Kalama Export grain terminal at a speed of about fifteen knots. ECF 51 at ¶ 3(g). A few minutes later, the Vessel passed the entrance to Port of Kalama's marina at

approximately the same speed. *Id*. Just after the Vessel passed the Kalama Marina, a wake of three to four feet entered the marina and caused damage to the structures, facilities, and moored boats. *Id*. at ¶ 3(h).

In a report to the Oregon Board of Maritime Pilots ("OBMP") dated April 17, 2020, Boyce reported that his "standard practice" is to reduce the speed of any vessel he pilots to around ten knots when passing Port of Kalama's marina. ECF 8 at ¶ 11. Boyce said he operated the Vessel at full ahead speed because there were no vessels berthed at the Kalama Export grain terminal. *Id*. Boyce's OBMP report does not mention any consideration given to the potential impact of the Vessel's speed on boats moored at Port of Kalama's marina or the structure of the marina itself. *Id*. at ¶ 12.

## DISCUSSION

Boyce moves for summary judgment asserting that (1) O.R.S. § 776.540 limits his liability to $250 unless the liability is based on willful misconduct and (2) there is no evidence that he committed willful misconduct. ECF 53.

### A.  Statutory Language

O.R.S. § 776.520 limits the liability of pilots "from the consequences of negligence or errors in judgment." *See also* O.R.S. § 776.510 (identifying the intent of the Legislative Assembly in O.R.S. §§ 776.520, 776.530, and 776.540 as "the stimulation and preservation of maritime commerce"). O.R.S. § 776.520(4) directs that a "vessel, its masters, owners, agents, or operators" shall not "assert directly or indirectly, any personal liability against [a pilot]" "[e]xcept as to such personal liability and rights over as may arise by reason of the *willful misconduct or gross negligence*" of the pilot. O.R.S. § 776.520(4) (emphasis added).

In turn, O.R.S. § 776.540(1) directs pilots to furnish "a security in the sum of $250" to the OBMP. No pilot "shall be liable for any such act or omission beyond the amount of the

security. However, this limitation of liability shall not apply . . . [t]o *willful misconduct*." *Id*.

(emphasis added). O.R.S. § 776.520 "incorporate[s O.R.S. § 776.540] into and ma[kes it] a part

of this tariff." O.R.S. § 776.520.

The thrust of Boyce's argument on summary judgment is that O.R.S. § 776.520 allows

pilots to enact tariff provisions eliminating all liability except as to two categories of

wrongdoing: willful misconduct or gross negligence. ECF 53 at 5. Boyce argues that O.R.S.

§ 776.540 automatically limits a pilot's liability to the $250 security except as to a single type of

wrongdoing: willful misconduct. *Id*. Put another way, Boyce argues that there is a difference

between gross negligence and the palpably more serious willful misconduct. *Id*. at 5–6.

Korea Tonnage, on the other hand, argues that willful misconduct and gross negligence

are synonymous.[1] ECF 61 at 3–5, 19–20. In other words, Korea Tonnage urges that "willful

misconduct" in O.R.S. § 776.540 means the same thing as "willful misconduct or gross

negligence" in O.R.S. § 776.520.

**B.  State Law on Gross Negligence and Willful Misconduct**

Ninth Circuit precedent directs courts considering maritime torts to look to state common

law. *Royal Ins. Co. of Am. v. Sw. Marine*, 194 F.3d 1009, 1015 (9th Cir. 1999); *Greger Pac.*

*Marine, Inc. v. Or. Offshore Towing, Inc.*, No. 3:13-cv-00461-SI, 2014 WL 3420770, at *6 n.5

---

[1] Korea Tonnage argues that this Court "impliedly reject[ed] the distinctions Boyce now raises" at the motion to dismiss stage and that the law-of-the-case doctrine precludes the Court from reconsidering it. ECF 61 at 2–3 (citing *Milgard Tempering v. Selas Corp. of Am.*, 902 F.2d 703, 715 (9th Cir. 1990)). This Court disagrees. Boyce "assume[d] but d[id] not concede that willful misconduct as used in the Act means that a licensed pilot acted with conscious indifference to damage that he knew was probable." ECF 19 at 3. Thus, the distinction was not "squarely before the [C]ourt," as Korea Tonnage now claims. ECF 61 at 3; *see also Milgard Tempering*, 902 F.2d at 715 (explaining that for the doctrine to apply, the issue must have been explicitly or necessarily decided in the prior decision, and that the application of the doctrine is discretionary).

(D. Or. July 10, 2014). Oregon courts, like those in many other states, have wrestled with the line—if any—between gross negligence and willful misconduct. Boyce directs this Court to *Falls v. Mortensen*, 207 Or. 130, 137 (1956), *overruled in part on other grounds by Lindner v. Ahlgren*, 257 Or. 127 (1970). *See* ECF 53 at 11–12.

In *Falls*, the Oregon Supreme Court differentiated *wanton* misconduct from ordinary and gross negligence:

> A wanton act is one done in reckless disregard of the rights of others evincing a reckless indifference to consequences to the life, or limb, or health, or reputation or property rights of another. It is *more than negligence, more than gross negligence*. It is such conduct as indicates a reckless disregard of the just rights or safety of others of the consequences of the action, *equivalent in result to willful misconduct.*

207 Or. at 137 (internal quotation marks omitted) (quoting *Ziman v. Whitley*, 147 A. 370, 371 (Conn. 1929)) (emphasis added). *Falls* then quoted Prosser approvingly:

> The distinction between willful and wanton conduct is that between one who casts a missile intending that it shall strike another, or believing that it is certain to strike him, and one who casts it where he has only reason to believe that it is extremely likely to do so.

*Id*. (quoting William L. Prosser, *Law of Torts* § 33 (2d ed. 1956)). Thus, Boyce argues, he cannot have committed willful misconduct because he did not intend to cause damage to the marina and, had he realized the Vessel was putting off such a large wake, he would have slowed down. ECF 53 at 13–14.

But Korea Tonnage points to *Williamson v. McKenna*, 223 Or. 366 (1960), *superseded by statute on other grounds as stated in State v. Hill*, 298 Or. 270 (1984) (en banc), in which the Oregon Supreme Court conducted a long survey of the usage of the term "gross negligence" in multiple states in the context of guest statutes. *See* ECF 61 at 3–5. The Oregon Supreme Court first explained,

> Misconduct may be conceived as ranging in infinite gradations
> from the slightest inadvertence to the most malicious purpose to
> inflict injury. . . . *At the upper end of the scale we set off
> intentional conduct*, i.e., conduct engaged in for the purpose of
> inflicting harm on another. At the opposite and lower end of the
> scale is a range of inadvertent conduct which we call negligence.
> *Between these two extremes the law has created still another
> category which is described variously as reckless, willful, or
> wanton conduct.*

*Williamson*, 223 Or. at 372 (citing Restatement (Second) of Torts § 500 (Am. Law Inst. 1975))

(emphasis added).

After surveying other states, the *Williamson* court quoted a treatise for the proposition

that courts "tend to assimilate 'gross negligence' to 'willful misconduct' . . . 'This is apparently

the position of the Oregon courts.'" *Id*. at 387 (quoting 2 Fowler V. Harper & Fleming James Jr.,

*The Law of Torts* 953 (1956)). "The division between gross negligence . . . and reckless conduct

is so vague and imperceptible, if it does exist, that we, as well as other courts, have been unable

to find a mode of expression which can serve as a vehicle of communication to describe the

difference." *Id*. at 389.

In response, Boyce points to *Hampton Tree Farms, Inc. v. Jewett*, 158 Or. App. 376

(1999). *See* ECF 71 at 7–8. In *Jewett*, the Court of Appeals, explicitly referencing *Falls*, wrote,

> [N]egligence consists of a continuum of fault from simple
> negligence through gross negligence to recklessness. Willful
> misconduct is not on that continuum. It does not involve a mere
> neglect of responsibility, however serious; to the contrary, it
> involves a conscious decision to act in a way that risks harm to
> another. To compare . . . willful misconduct with . . . negligence,
> thus, is to compare conscious wrongdoing with neglect to take
> reasonable care. Those things are simply not comparable.

*Id*. at 395.

This split in authority makes the waters of Oregon tort law difficult to navigate,

especially given the dearth of case law on these statutory provisions. "In interpreting a state

statute, a federal court applies the relevant state's rules of statutory construction." *LL Liquor, Inc. v. Montana*, 835 F. App'x 917, 920 (9th Cir. 2020) (unpublished) (internal quotation marks omitted) (quoting *In re W. States Wholesale Nat. Gas Antitrust Litig.*, 715 F.3d 716, 746 (9th Cir. 2013)). In Oregon, courts interpret statutes first by looking at the text and context of the statute, applying rules of construction that bear directly on interpreting the statutory provision. *See Portland Gen. Elec. Co. v. Bureau of Lab. and Indus.*, 317 Or. 606, 610-611 (1993), *superseded by statute in part as stated in State v. Gaines*, 346 Or. 160, 166 (2009) (en banc). When it is proffered by a party, courts may consider the legislative history of a statute, regardless of whether there is any ambiguity in the text. *Gaines*, 317 Or. at 171-172.

This Court is mindful of the two schools of thought on the difference, if any, between gross negligence and willful misconduct. That said, the varying phraseology of O.R.S. § 776.520 ("willful misconduct or gross negligence") and O.R.S. § 776.540 ("willful misconduct") imply that the two terms have distinct meanings at least in this context. *See State v. Guzek*, 322 Or. 245, (1995), *superseded by statute on other grounds as stated in State v. Moore*, 927 P.2d 1073 (Or. 1996), (citing *Portland Gen. Elec.*, 317 Or. at 611) ("When the legislature uses different terms in related statutes, we presume that the legislature intended different meanings."). Any doubt as to this point is clarified by the legislative history, which shows that the state senators who contemplated the bill were told explicitly "that willful misconduct would not be exempted from liability."[2] ECF 54-8, Ex. H, at 28. The senators were also presented with a hypothetical in which a vessel owner sued a pilot for gross negligence as allowed under "the current pilotage law" (*i.e.*,

---

[2] Korea Tonnage points to an earlier hearing where a senator asked whether a pilot would be liable for "gross negligence or showed willful misconduct" and "was told that the pilot would certainly be held liable under those circumstances." ECF 54-8, Ex. H, at 16. Regardless, the language at the later hearing, at which the subcommittee decided to keep the section in the bill, was clear that only willful misconduct would create pilot liability.

O.R.S. § 776.520) and were told that the bill would allow the pilot to "'bond out' rather than incur additional defense expenses." *Id.* at 37-38. Thus, this Court finds, interpreting under admiralty and Oregon law and looking at the text and context of the statute, that O.R.S. § 776.540 allows for recovery up to $250 for any damages flowing from a proven act of gross negligence and does not limit damages flowing from an act of willful misconduct.

## C.  Because There Is a Genuine Issue of Material Fact as to Whether Boyce Engaged in Willful Misconduct, Summary Judgment Is Precluded

Ultimately, Boyce's motion for summary judgment fails regardless because, in the light most favorable to Korea Tonnage, there is a genuine issue of material fact as to whether Boyce acted willfully. Even *Falls*, which Boyce relies on, acknowledges that:

> [An] actor's conduct is in reckless disregard of the safety of another *if he intentionally does an act* or fails to do an act which it is his duty to the other to do, *knowing or having reason to know of facts* which would lead a reasonable man to realize that the actor's conduct not only creates an unreasonable risk of bodily harm to the other but also involves a high degree of probability that substantial harm will result to him.

207 Or. at 136-137 (internal quotation marks omitted) (quoting Restatement (Second) of Torts § 500) (emphasis added); *see also id*. at 143 ("Willful misconduct depends upon the facts of a particular case, and necessarily involves deliberate, intentional, *or wanton* conduct in doing or omitting to perform acts, with knowledge or appreciation of the fact, on the part of the culpable person, that danger is likely to result therefrom." (internal quotation marks omitted) (quoting *Cowgill v. Boock*, 189 Or. 282, 292 (1950) (en banc) (emphasis added)). Willful misconduct, then, occurs when an actor intentionally does an act while being reckless as to the consequences of that act; intentional misconduct, on the other hand, requires that the actor intend the result. *See* Restatement (Third) of Torts: Liability for Physical and Emotional Harm § 1 ("A person acts with intent to produce a consequence if: (a) the person acts with the purpose of producing that

consequence; or (b) the person acts knowing that the consequence is substantially certain to result."); *id*. § 2, cmt. A ("When 'willful' misconduct is used disjunctively with 'wanton' misconduct, willful is often interpreted as requiring a showing of intentional harm . . . When willful misconduct is the sole criterion, it is sometimes, though not always, interpreted along the lines of recklessness.").

Here, there is evidence that Boyce intentionally and affirmatively increased the speed of the Vessel from half speed to full speed and, finally, to sea speed. ECF 62-1, Ex. C, at 8. There is also evidence that Boyce had a duty to check the size of the wake created by the Vessel, ECF 62-1, Ex. D, at 21, that he did so early in the voyage, *id*., Ex. E at 56–57, and that he did not conduct new wake assessments, *id*. at 57–58, despite ordering a speed increase. Boyce notes that the wake assessment was conducted when the Vessel was traveling at a similar speed. ECF 71 at 8; ECF 54-4. Ex. D, at 11. Be that as it may, there is evidence that wake size varies not only with speed but also with other factors such as the width and depth of the waterway as well as currents. ECF 62-1, Ex. D, at 21. In addition, Boyce himself admitted that he usually slowed down to about ten knots when passing the Kalama Export grain terminal, but maintained a speed around fifteen knots because he did not see a vessel berthed there. ECF 54-4, Ex. E, at 3. Whether Boyce knew or should have known facts that would lead a reasonable person to conclude that maintaining a high rate of speed created an unreasonable risk and high probability of harm is a disputed issue of fact properly reserved for trial. And this case may ultimately come down to credibility determinations properly made at trial. *See S.E.C. v. Koracorp Indus., Inc.*, 575 F.2d 692, 699 (9th Cir. 1978) ("[C]ourts have long held that summary judgment is singularly inappropriate where credibility is at issue.").

**CONCLUSION**

Because this Court cannot say as a matter of law that Boyce's actions did not rise to the level of willful misconduct, the motion for summary judgment, ECF 53, is DENIED.

**IT IS SO ORDERED**.

DATED this 15th day of September 2021.

/s/ Karin J. Immergut
Karin J. Immergut
United States District Judge